IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERIN DISTRICT OF TEXAS
WACO DIVISION

MALIBU BOATS, LLC,

               Plaintiff

v.

GO SURF ASSIST, LLC,

               Defendant.

Civil Action No. 20-CV-552-ADA

**Jury Trial Demanded**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Malibu Boats, LLC ("Malibu" or "Plaintiff") hereby alleges as its Complaint against Defendant Go Surf Assist, LLC ("GSA" or "Defendant") as follows:

### INTRODUCTION

1. Malibu is the market share leader in the inboard sport boat industry. In recent years, Malibu has defended its position through the development and application of Malibu's award-winning innovations, some of which are embodied in Malibu's commercially available wake modification systems marketed under the trade name "SURF GATE®." The U.S. Patent Office has awarded Malibu many patents on its wake-surf technologies, including U.S. Patent No. 8,578,873 ("the '873 I Patent"), U.S. Patent No. 9,260,161 ("the '161 Patent"), U.S. Patent No. U.S. Patent No. 9,694,873 ("the '873 II Patent"), 9,914,504 ("the '504 Patent"), U.S. Patent No. 10,322,777 ("the '777 Patent"), and U.S. Patent No. 10,683,061 ("the '061 Patent"). In response to the success of Malibu's wake surf technology, numerous competitors have recognized the value and strength of Malibu's wake surfing patent portfolio, taken a license to

that patent portfolio, and introduced surf systems practicing Malibu's technology on their own lines of boats.

2.      After the release and success of Malibu's SURF GATE®, providers of aftermarket surf systems, including GSA, began selling surf systems that practice Malibu's patented technology to boat owners without manufacturer-installed surf systems.  These aftermarket surf systems also infringe Malibu's patents.  Moreover, GSA sells its surf systems, which have no substantial non-infringing use, directly to boat manufacturers for installation on their boats, including Malibu's competitors.  Despite Malibu's attempts for over a year to persuade GSA to cease its infringement or take a license to Malibu's portfolio, GSA has refused to do so.  Malibu is entitled to compensation for GSA's infringement and to an injunction precluding GSA from selling surf systems that infringe Malibu's valuable intellectual property.

3.      Among Malibu's many innovations in the design, manufacture, and marketing of high performance inboard water boats is its revolutionary wake surf technology, for which it has been awarded numerous patents, including the '873 I, '161, '873 II, '504, '777, and '061 Patents. This technology modifies the wake formed by a boat travelling through water, which, in part, creates a better-quality surf wake and enables users to surf on either side of the boat's wake at the push of a button.  Further, Malibu's SURF GATE® technology has revolutionized the manner in which users who engage in wake surfing are able to utilize their boats.  Before the development of Malibu's wake surf technology, some boaters who sought to engage in wake surfing had to first cumbersomely configure their boats.  For example, if a boater wanted to surf on a port side wake, he or she had to fill ballast tanks or bags on one the port side with hundreds of pounds of water, and often shift additional non-water ballast, like passengers, to the port side of the boat.  All this ballast on the port side caused the boat to lean or list significantly, which

created a larger, more pronounced, surf-quality wake on the weighted (in this example, the port) side of the boat only. A similar configuration was needed if a boater wanted to surf on a starboard side, but instead of the port side, all the ballast was directed to the starboard side. Either way, the configuration was cumbersome, time-consuming, and potentially annoying for passengers. Worse still, if a boater wanted to switch the surf wave from one side to the other, he or she would have to transfer substantially all ballast and passengers to the other side of the boat—a process that takes a substantial amount of time as the boater did not just have to fill ballast or move people on one side, her or she also had to empty, reduce or move ballast on the other. Malibu's patented SURF GATE® technology alleviates this time-consuming and cumbersome process. Boats manufactured by Malibu that utilize its patented SURF GATE® technology allow boaters, at the touch of a button, to configure a boat create a better-quality surf wave on a desired side of the boat in a matter of seconds without having to shift passengers or weight. Accordingly, Malibu's SURF GATE® allows users to more easily configure a boat for surfing on a desired side and readily and straightforwardly switch to configuring the boat for surfing on the other side, even doing so without stopping. Such configurations vastly improve the usability of the boats for wake surfing and allow surfers to perform previously impossible moves.

4.       Malibu's introduction of SURF GATE® garnered significant public attention, and SURF GATE® won the Watersports Industry Association's Innovation of the Year award in 2013. SURF GATE® has received widespread praise in the industry since its release. For example, a May 2013 review of SURF GATE® in Wakeboarding Magazine noted that "the possibilities with Surf Gate are absolutely revolutionary. You can instantly switch which side of

the boat you want your wave, so transfers from side to side are now a reality."[1]  An October 2013 article in Wakeboarding Magazine discusses "new surf-specific boat technology" including SURF GATE® (and Nautique, which has licensed Malibu's patented technology), stating that the technology has brought wakesurfing "leaps and bounds in the direction of progression," and that certain moves were "previously near-impossible prior to the Malibu Surf Gate."[2]  A September 2015 article in Boarders Magazine describes the different wakesurfing technologies offered performance sport boat manufacturers, including Malibu and licensees of its patented wakesurfing technology.  The article comments that "Malibu's patented Surf Gate technology has helped shape a new concept for wakesurf boat development by allowing a wakesurfer to transfer wake to wake, frontside to backside surfing, in a second.  Since then every other boat company has created a similar sort of system that has been less focused on an individually weighted down starboard or port side, but rather an equal or at least mostly equal weighted boat that can change from side to side, regular to goofy, within seconds."[3]

5.      Malibu's SURF GATE® system has also enjoyed tremendous commercial success. Malibu currently sells thousands of boats equipped with SURF GATE® systems per year, and the take rate of Malibu's options SURF GATE® system is nearly 100% among Malibu buyers.

6.      In response to the success of Malibu's SURF GATE® system, GSA began offering its "Go Surf Assist" product, which copied Malibu's innovative and entirely revolutionary redirection of at least water on one side to modify and improve the wake on the

---

1 http://www.wakeboardingmag.com/blog/wakeboarding-brand-channel/malibu-wakeboard-boats/2013/05/24/howit-works-surf-gate.
2 https://www.wakeboardingmag.com/blog/features/2013/10/17/how-to-wakesurf-transfer-on-the-fly.
3 http://boardersmag.com/articles/just-press-surf-a-new-era-in-wake-surf-towboat-technology.

opposite side.  GSA markets its surf systems to individual users through its website and through its self-described "retail channel" at www.wakemakers.com.[4]   GSA also claims to have "partnered with Wakemakers to create a dealer channel for locations all across the US and other countries," and GSA encourages customers to contact boat dealers "to get set up to become a dealer" of GSA's infringing systems.[5]   Indeed, as depicted in the following photograph, GSA's website currently markets the ability to use GSA's infringing products on Malibu's own boats:[6]



---

4 *See* https://www.gosurfassist.com/faqs; https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html.
5 *See* https://www.gosurfassist.com/faqs.
6 *See, e.g.,* https://www.gosurfassist.com/pictures?lightbox=dataItem-j3ubh2rb.

7.      The industry has recognized the pioneering invention of Malibu's wake surf technology and the patents that enable it.  Major industry players like Nautique/Correct Craft, Chaparral, Tigé, Sanger, and Mastercraft have entered into license agreements with Malibu regarding certain of Malibu's wake surf technology patents that, among other things, permit those companies to make and use wake modification systems that redirect water on one side of the boat to improve the wake surfing on the other side.  Similarly, aftermarket supplier Wake Worx, LLC has taken a license to Malibu's patented technology, recognizing that Malibu's portfolio and its revolutionary wakesurfing technology is not limited to boat manufacturers.[7] Despite having been on notice for over one year that it was infringing Malibu's patents, Go Surf Assist has refused to take a license, opting to infringe Malibu's patents instead of paying for the right to use Malibu's inventions.  Malibu files this lawsuit to redress Go Surf Assist's infringement.

## PARTIES

8.      Malibu is a Delaware corporation with its principal place of business at 5075 Kimberly Way, Loudon, Tennessee 37774-6469.

9.      GSA is a Texas corporation with its principal place of business at 21861 FM 2393, Wichita Falls, TX 76310.  Public records list GSA's business registration address as 9900 Spectrum Dr., Austin, TX, 78717-4555.

## JURISDICTION AND VENUE

10.      This action arises under the patent laws of the United States, Title 35 of the United States Code, including, but not limited to, 35 U.S.C. § 271.

---

7 *See* https://investors.malibuboats.com/press-releases/press-release-details/2017/Malibu-Boats-Inc-Announces-License-With-Wake-Worx/default.aspx.

11.     This court has original jurisdiction over patent infringement claims under 28 U.S.C. § 1331 and 1338(a).

12.     Personal jurisdiction over GSA is proper because GSA is domiciled, conducts business, and has committed acts of patent infringement in Texas.

13.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) – (c) and 1400(b) because GSA's business registration address is within this District, at 9900 Spectrum Dr., Austin, TX, 78717-4555.   Further, on information and belief, GSA has committed acts of infringement in this judicial district.   *See, e.g.,*   https://austinboats.com/inventory/2020-tige-22rzx-7345236/ (boat with one of the Accused Products (defined below) offered for sale in this District):



**RELATED CASES**

14.     In an earlier concluded case in the Eastern District of Tennessee, Case No. 3:13-CV-00656-TAV-HBG ("the Nautique case"), Malibu asserted a claim of infringement of the '873 I Patent (along with U.S. Patent Nos. 8,539,897 and 8,534,214) against a different

defendant, Nautique Boat Company, Inc.  The Nautique case was filed on October 31, 2013.

Malibu amended its complaint to add a claim for infringement of the '873 I Patent on December

13, 2013.  The Nautique case was dismissed by stipulation of the parties on February 17, 2015,

after Nautique entered into a royalty bearing license agreement with Malibu.

15.     In two other earlier cases concluded in the Eastern District of Tennessee, Case

No. 3:15-CV-00276-TAV-HBG ("the MasterCraft I case") and Case No. 3:16-cv-00082-TAV-

HBG ("the MasterCraft II case"), Malibu asserted claims for infringement of the '161 Patent and

the '873 I Patent against MasterCraft Boat Company, LLC.  The Mastercraft I and Mastercraft II

cases were both dismissed by stipulation of the parties on May 10, 2017, after Mastercraft

entered into a royalty bearing license agreement with Malibu.

16.     In two consolidated cases currently pending in the Eastern District of Tennessee,

Case Nos. 3:18-CV-015-TAV-HBG and 3:19-CV-225-TAV-HBG (collectively, "the Skier's

Choice case"), Malibu asserted claims for infringement of the '873 I, '161, and '777 Patents

(along with U.S. Patent No. 9,919,695) against Skier's Choice, Inc.  The Skier's Choice case

remains ongoing and is scheduled for trial beginning September 29, 2020.

### General Allegations

17.     Malibu designs, manufactures, and markets high performance inboard sport boats,

and it has had the leading market share position in the United States since 2010.  Since the

company was founded in 1982, Malibu has been a consistent innovator in the inboard sport boat

industry, designing products that appeal to an expanding range of recreational boaters and water

sports enthusiasts whose passion for boating and water sports is a key aspect of their lifestyle.

Malibu's innovations, such as its award-winning SURF GATE® technology, expand the market

for its products by introducing consumers to new and exciting recreational activities and

enhancing their experience of a day on the water with family and friends.  Malibu has secured numerous patents that cover its innovations.

18.     The '873 I Patent is titled "Surf Wake System for A Watercraft" and issued on November 12, 2013. A true and correct copy of the '873 I Patent is attached as Exhibit A.

19.     Malibu owns all rights, title, and interest in the '873 I Patent.

20.     The '873 I Patent is valid and enforceable.

21.     On November 16, 2016, the Patent Trial and Appeal Board at the U.S. Patent and Trademark Office issued orders in response to two separate *inter partes* review petitions, IPR2016-01057 and IPR2016-01058, denying petitions for *inter partes* review of claims 1, 2, 6, 7, 17–20, 22, 23, and 27-29 of the '873 I Patent, and concluding that the petitioner, MasterCraft Boat Company, LLC, had "not shown a reasonable likelihood of success in any of its challenges to" the claims of the '873 I Patent.

22.     The '161 Patent, which issued on February 16, 2016, is titled "Surf Wake System for A Watercraft."  A true and correct copy of the '161 Patent is attached as Exhibit B.

23.     Malibu owns all rights, title, and interest in the '161 Patent.

24.     The '161 Patent is valid and enforceable.

25.     On August 11, 2017, the U.S. Patent and Trademark Office issued an Ex Parte Reexamination Certificate in Ex Parte Reexamination No. 90/013,819. The Ex Parte Reexamination Certificate confirmed the patentability of claims 1, 7, 10, 12, 13, 15, 19, and 29 of the '161 Patent.  Claims 2-6, 8, 9, 11, 14, 16-18, 20-28, 30, and 32-50 of the '161 Patent were not reexamined.

26.     The '873 II Patent, which issued on July 4, 2017, is titled "Surf Wake System for A Watercraft."  A true and correct copy of the '873 II Patent is attached as Exhibit C.

27.     Malibu owns all rights, title, and interest in the '873 II Patent.

28.     The '873 II Patent is valid and enforceable.

29.     The '504 Patent, which issued on March 13, 2018, is titled "Surf Wake System for A Watercraft."  A true and correct copy of the '504 Patent is attached as Exhibit D.

30.     Malibu owns all rights, title, and interest in the '504 Patent.

31.     The '504 Patent is valid and enforceable.

32.     The '777 Patent, which issued on June 18, 2019, is titled "Surf Wake System for A Watercraft."  A true and correct copy of the '777 Patent is attached as Exhibit E.

33.     Malibu owns all rights, title, and interest in the '777 Patent.

34.     The '777 Patent is valid and enforceable.

35.     The '061 Patent, which issued on June 16, 2020, is titled "Surf Wake System for A Watercraft."  A true and correct copy of the '061 Patent is attached as Exhibit F.

36.     Malibu owns all rights, title, and interest in the '061 Patent.

37.     The '061 Patent is valid and enforceable.

38.     GSA manufactures, offers for sale, and sells within the United States surf systems that are specifically designed for installation on inboard water-sport boats.  Further, GSA installs its infringing surf systems on boats at its facilities in Texas, and it also instructs others (including customers and dealers) to install its infringing surf systems on boats in an infringing manner.  *See* https://www.gosurfassist.com/instructional-videos-installs.  On information and belief, GSA has, since at least 2015, marketed and sold its infringing "Go Surf Assist" surf system to customers and boat manufacturers, and it has installed such infringing systems on inboard watersports boats.  GSA is presently advertising and offering for sale in the United States its infringing surf system.

39.     GSA learned of at least the '873 I, '161, '873 II, '504, and '777 Patents before the filing of the present complaint.  On July 18, 2019, counsel for Malibu sent Ryan Swiatek and Krystal Swiatek, co-owners of GSA, a letter notifying GSA of Malibu's patents, including the '873 I, '161, '873 II, '504, and '777 Patents and informing GSA that its products sold under the brand name "Go Surf Assist" infringed at least the '777 Patent and potentially infringed other patents as well.  Further, on information and believe, GSA became aware of Malibu's patent portfolio at least through its knowledge of Malibu's licenses with GSA's boat manufacturer customers and those boat manufacturers' payment of royalties for GSA surf systems pursuant to those licenses, and it was aware that its "Go Surf Assist" surf system infringed these patents. Furthermore, on information and belief, GSA became aware of Malibu's patent portfolio through Malibu's sale of boats including SURF GATE® clearly marked as practicing Malibu's patents. Furthermore, on information and belief, GSA became aware of Malibu's patent portfolio through Malibu's extensive and public enforcement, litigation, and licensing of its wake surfing portfolio.

40.     Despite knowing of at least the '873 I, '161, '873 II, '504, and '777 Patents and that its surf systems infringe these patents, GSA has infringed and continues to infringe the '873 I, '161, '873 II, '504, and '777 Patents through making, using, selling, and/or offering for sale within the United States the infringing products, and through inducing and/or contributing to infringement by GSA's customers.

### CLAIMS FOR RELIEF

41.     The allegations in the following Count I, Count II, Count III, Count IV, Count V, and Count VI have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

42.     Malibu contends that GSA's products marketed under the brand name "Go Surf Assist," including the Go Surf Assist Surf System and the Go Surf Assist Complete Kit, (collectively, the "Accused Products") infringe at least one valid and enforceable claim of the '873 I, '161, '873 II '504, '777, and '061 Patents, as discussed in Counts I-VI, either directly under 35 U.S.C. § 271(a), through inducement of infringement under 35 U.S.C. § 271(b), and/or by selling these products knowing that they, alone or in combination with other components, infringe the '873 I, '161, '873 II, '504, and '777 Patents and thereby contribute to others' infringement.

43.     Specifically, Malibu contends that each element of at least one claim of the '777 and '061 Patents is literally present in the Accused Products or their use, and further that GSA has infringed other claims of the '777 and '061 Patents by installing the Accused Products on inboard watersports boats and/or testing inboard watersports boats with the Accused Products installed.  Malibu further contends that GSA induces or contributorily infringes at least one claim of the '777 and '061 Patents.  If the Court's constructions or other determinations indicate that an element of one of the claims of the '777 and '061 Patents discussed below is not literally present, Malibu contends that each such element is present under the doctrine of equivalents and reserves its right to provide more detailed doctrine of equivalents contentions after discovery and/or a claim construction order from the Court.

44.     Malibu further contends that GSA has infringed and continues to infringe at least one claim of the '873 I, '161, '873 II, and '504 Patents by installing the Accused Products on inboard watersports boats and/or testing inboard watersports boats with the Accused Products installed.  Malibu further contends that GSA induces or contributorily infringes at least one claim of the '873 I, '161, '873 II, and '504 Patents, and that such infringement results in each element

of at least one claim of the '873 I, '161, '873 II, and '504 Patents being literally present in the resulting infringing combination or use.  If the Court's constructions or other determinations indicate that an element of one of the claims of the ' 873 I, '161, '873 II, and '504 Patents discussed below is not literally present, Malibu contends that each such element is present under the doctrine of equivalents and reserves its right to provide more detailed doctrine of equivalents contentions after discovery and/or a claim construction order from the Court.

45.     The Accused Products identified herein have been identified without the benefit of discovery, and are not intended to be exhaustive.  Furthermore, the claims of the '873 I, '161, '873 II, '504, '777, and '061 Patents identified below are merely representative, and do not include an exhaustive list of claims infringed by the Accused Products.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,578,873

46.     Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

47.     GSA infringes the '873 I Patent by, *inter alia*, making and/or using within the United States boats with the Accused Products installed that are covered by one or more claims of the '873 I Patent.  GSA has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).  For example, GSA markets on its website that it performs installations of the Accused Products on boats at its Wichita Falls, Texas facilities.    *See* https://www.gosurfassist.com/faqs.

48.     Further, GSA induces others to infringe one or more claims of the '873 I Patent, acting without authority or license from Malibu, in violation of 35 U.S.C. § 271(b).  GSA has knowingly or with willful blindness induced its customers and potential customers to infringe the '873 I Patent with the specific intent to induce such infringement by, among other things,

encouraging installation of the Accused Products through advertisements, marketing material, installation instructions, and other documentation that instructs customers to install the Accused Products on inboard water sports boats in an infringing manner.  For example, GSA encourages customers through its website to purchase and install the Accused Products in an infringing manner themselves, and it also encourages dealers to purchase and install the Accused Products in an infringing manner.  GSA's website provides instructional videos specifically instructing the installation and use of the Accused Products in an infringing manner.  *See* https://www.gosurfassist.com/instructional-videos-installs.

49.     GSA also contributorily infringes one or more claims of the '873 I Patent in violation of 35 U.S.C. § 271(c).  GSA sells and offers to sell products or components knowing that they, alone or in combination with other components, infringe the '873 I Patent and thereby contribute to others' infringement of the '873 I Patent.  GSA knows its products and components are especially made or especially adapted for installation on inboard watersports boats in a manner that infringes the '873 I Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

50.     For example, GSA manufactures, uses, sells, and offers for sale products, including the Accused Products, that when installed and used by GSA or when installed or used by others in the manner instructed by GSA infringe Claim 1 of the '873 I Patent.

51.     **Claim 1** of the '873 I Patent recites:

A boat configured to generate a starboard side surf wake for at least right-foot forward wake surfing and a port side surf wake for at least left-foot-forward wake surfing, said port side surf wake different from said starboard side surf wake, the boat comprising:

a port side upright water diverter movable between a first and second position, wherein one of said first and second positions produces said starboard side surf wake;

a starboard side upright water diverter movable between a first and second position, wherein one of said first and second positions produces said port side surf wake;

a controller responsive to user input into an input device; and

one or more actuators responsive to said controller to move said port side water diverter from one of said first and second positions to the other of said first and second positions, and move said starboard side water diverter from one of said first and second positions, wherein when said port side water diverter produces said starboard side surf wake for right-foot-forward wake surfing, a port side wake is substantially unsuitable for left-foot-forward wake surfing and when said starboard side water diverter produces said port side surf wake for left-foot-forward wake surfing, a starboard side wake is substantially unsuitable for right-foot-forward wake surfing.

52.     The Accused Products are surf systems configured to be installed on inboard water sports boats, and they are configured to generate a starboard side surf wake for at least right-foot forward wake surfing and a port side surf wake for at least left-foot-forward wake surfing, said port side surf wake different from said starboard side surf wake.  *See, e.g.,* https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html     ("Switch      sides instantly with the push of a button or the GSA app. No wasted time switching the wave from

regular to goofy-footed riders as it only takes under three seconds to switch the side the wave is on. Surfers can also make wave transfers while riding.").

53.     The Accused Products include a port side upright water diverter movable between a first and second position, wherein one of said first and second positions produces starboard side wake.   The Accused Products also include a starboard side upright water diverter movable between a first and second position, wherein one of said first and second positions produces said port side surf wake.   *See, e.g.,*   https://www.gosurfassist.com/featured-products (describing Go Surf Assist Complete Kit including "Starboard Surf Tab" and "Port Surf Tab").   The Starboard Surf Tab and Port Surf Tab each include one or more upright water diverters and when installed in the manner directed by GSA are movable between at least first and second positions.



Upright Water Diverter

54.     The Accused Products also include a controller responsive to user input on a user device.   *See, e.g.,*   https://www.gosurfassist.com/featured-products (describing "GSA Surf Controller").

55.     The Accused Products also include actuators responsive to the controller to move the water diverters from first positions to second positions, wherein the port side water diverter produces a starboard side surf wake and wherein the starboard side water diverter produces a port side surf wake.  *See, e.g.,* https://www.gosurfassist.com/featured-products (describing Lenco XDS Short Throw Actuators and Actuator Control Harness).  Upon information and belief, this configuration results in a smoother port side surf wake while producing a starboard surf wake that is substantially unsuitable for surfing.  *See* https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix4.



56.     Malibu has suffered damages as a result of GSA's infringement of the '873 I Patent, including sales that Malibu lost as a result of GSA's infringement.

57.     GSA's infringement of the '873 I Patent, including its inducement of infringement and contributory infringement, is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

58.     GSA will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '873 I Patent unless enjoined by the Court.

59.     GSA's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.

60.     GSA will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

61.     GSA's infringement of the '873 I Patent has been and continues to be deliberate and willful.  In committing these acts of infringement, GSA committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

62.     GSA's infringement of the '873 I Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,260,161

63.     Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

64.     GSA infringes the '161 Patent by, *inter alia*, making and/or using within the United States boats with the Accused Products installed that are covered by one or more claims

of the '161 Patent. GSA has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).  For example, GSA markets on its website that it performs installations of the Accused Products on boats at its Wichita Falls, Texas, facilities.  *See* https://www.gosurfassist.com/faqs.

65.     Further, GSA induces others to infringe one or more claims of the '161 Patent, acting without authority or license from Malibu, in violation of 35 U.S.C. § 271(b).  GSA has knowingly or with willful blindness induced its customers and potential customers to infringe the '161 Patent with the specific intent to induce such infringement by, among other things, encouraging installation of the Accused Products through advertisements, marketing material, installation instructions, and other documentation that instructs customers to install the Accused Products on inboard water sports boats in an infringing manner.  For example, GSA encourages customers through its website to purchase and install the Accused Products in an infringing manner themselves, and it also encourages dealers to purchase and install the Accused Products in an infringing manner.  GSA's website provides instructional videos specifically instructing the installation and use of the Accused Products in an infringing manner.  *See* https://www.gosurfassist.com/instructional-videos-installs.

66.     GSA also contributorily infringes one or more claims of the '161 Patent in violation of 35 U.S.C. § 271(c).  GSA sells and offers to sell products or components knowing that they, alone or in combination with other components, infringe the '161 Patent and thereby contribute to others' infringement of the '161 Patent.  GSA knows its products and components are especially made or especially adapted for installation on inboard watersports boats in a manner that infringes the '161 Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

19

67.     For example, GSA manufactures, uses, sells, and offers for sale products, including the Accused Products, that when installed and used by GSA or when installed or used by others in the manner instructed by GSA infringe Claim 1 of the '161 Patent. **Claim 1** of the '161 Patent recites:

> A water-sports boat having a surf wake system for modifying a wake having eventually diverging port and starboard waves formed by the water-sports boat travelling through water to enhance the starboard wave to have a face substantially smoother than a face of the port wave or to enhance the port wave to have a face substantially smoother than a face of the starboard wave, the water-sports boat comprising:
>
> a hull having a transom;
>
> a rudder for steering the water-sports boat as the hull moves through the water;
>
> at least one of ballast tanks, bags, or bladders; and
>
> a pair of flaps including a port flap and a starboard flap, each independently movable from a retracted position wherein a respective flap is substantially entirely retracted behind the transom such that no substantial portion of the respective flap extends past a port-side edge, a starboard side edge, or a bottom edge of the transom to a deployed position in which portions of a respective flap move past the transom to deflect water traveling along the hull of the water-sports boat and past the transom;
>
> wherein the port flap, wherein in the deployed position while the starboard flap is in the retracted position, enhances the starboard wave by making the face

of the starboard wave substantially smoother than the face of the port wave;

wherein the starboard flap, wherein in the deployed position while the port flap is in the retracted position, enhances the port wave by making the face of the port wave substantially smoother than the face of the starboard wave;

wherein the water sports boat is configured to change from enhancing the starboard wave to enhancing the port wave when a surfer desires to change from surfing an enhanced starboard wave to surfing an enhanced port wave or to change from enhancing the port wave to enhancing the starboard wave when the surfer desires to change from surfing the enhance port wave to surfing the enhanced starboard wave, and wherein the water-sports boat is configured to change from enhancing the port wave to enhancing the starboard wave while moving through water at a speed suitable for surfing.

68.     The Accused Products are surf systems configured to be installed on inboard water sports boats, and are surf wake systems for modifying a wake having eventually diverging port and starboard waves formed by the water-sports boat travelling through water to enhance the starboard wave to have a face substantially smoother than a face of the port wave or to enhance the port wave to have a face substantially smoother than a face of the starboard wave. *See* https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix4; https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix3.



69.    The Accused Products are configured to be installed on a water-sports boat that includes a hull having a transom and a rudder for steering the water-sports boat as the hull moves through the water.  *See, e.g.,*  https://www.gosurfassist.com/faqs  ("This surf system works on many different hulls and must be an inboard motor (flat bottom, deep v, direct drive, etc.) pending there is enough room on the transom (under water lights, accessories mounted in the way, etc.)."); *see also* https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html (listing "Confirmed Applications" of the Accused Products on over 30 inboard watersports boats, each including a hull and a rudder).

70.    The Accused Products include a pair of flaps, including a port flap and a starboard flap. *See, e.g.,*  https://www.gosurfassist.com/featured-products  (describing Go Surf Assist Complete Kit including "Starboard Surf Tab" and "Port Surf Tab").

71.    Each flap on the pair of flaps in the Accused Products is independently movable from a position in which it is substantially entirely retracted behind the transom, such that no

substantial portion of the respective flap extends past a port-side edge, a starboard side edge, or a bottom edge of the transom. *See, e.g.,* https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv2; https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv1.



72.     On information and belief, each flap of the Accused Products can be deployed to a position in which portions of the flap move past the transom to deflect water traveling along the hull of the water-sports boat and past the transom. *See, e.g.,* https://www.gosurfassist.com/featured-products (listing "Controller Information" that explains the "Left Button" that "Deploys starboard side tab creating a surf wave on the left side of the boat" and "Right Button" that "Deploys port side tab creating a surf wave on the right side of the boat."):



73.     As discussed above, the port flap of the Accused Products, when in the deployed position while the starboard flap is in the retracted position, enhances the starboard wave by making the face of the starboard wave substantially smoother than the face of the port wave, and vice versa. As discussed above, the starboard flap is deployed for surfing a port side wake, and the port flap may be deployed for surfing a starboard side wake.

74.     The Accused Products are configured to change from enhancing the starboard wave to enhancing the port wave when a surfer desires to change from surfing an enhanced starboard wave to surfing an enhanced port wave, and vice versa, while moving through water at

a speed suitable for surfing.  *See, e.g.,* https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html ("Instantly switch the surf wave from side to side with the push of a button.")

75.    Malibu has suffered damages as a result of GSA's infringement of the '161 Patent, including sales that Malibu lost as a result of GSA's infringement.

76.    GSA's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

77.    GSA will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '161 Patent unless enjoined by the Court.

78.    GSA's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.   These include the loss of customer goodwill resulting from infringement and impairment of Malibu's reputation as an innovator if GSA is permitted to practice Malibu's patents.

79.    GSA will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

80.    Upon information and belief, GSA's infringement of the '161 Patent has been and continues to be deliberate and willful.  In committing these acts of infringement, GSA committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

81.    GSA's infringement of the '161 Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,694,873

82.     Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

83.     GSA infringes the '873 II Patent by, *inter alia*, making and/or using within the United States boats with the Accused Products installed that are covered by one or more claims of the '873 II Patent.  GSA has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).  For example, GSA markets on its website that it performs installations of the Accused Products on boats at its Wichita Falls, Texas, facilities.  *See* https://www.gosurfassist.com/faqs.

84.     Further, GSA induces others to infringe one or more claims of the '873 II Patent, acting without authority or license from Malibu, in violation of 35 U.S.C. § 271(b). GSA has knowingly or with willful blindness induced its customers and potential customers to infringe the '873 II Patent with the specific intent to induce such infringement by, among other things, encouraging installation of the Accused Products through advertisements, marketing material, installation instructions, and other documentation that instructs customers to install the Accused Products on inboard water sports boats in an infringing manner.  For example, GSA encourages customers through its website to purchase and install the Accused Products in an infringing manner themselves, and it also encourages dealers to purchase and install the Accused Products in an infringing manner.  GSA's website provides instructional videos specifically instructing the installation and use of the Accused Products in an infringing manner.  *See* https://www.gosurfassist.com/instructional-videos-installs.

85.     GSA also contributorily infringes one or more claims of the '873 II Patent in violation of 35 U.S.C. § 271(c).  GSA sells and offers to sell products or components knowing

that they, alone or in combination with other components, infringe the '873 II Patent and thereby contribute to others' infringement of the '873 II Patent. GSA knows its products and components are especially made or especially adapted for installation on inboard watersports boats in a manner that infringes the '873 II Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

86.     For example, GSA manufactures, uses, sells, and offers for sale products, including the Accused Products, that when installed and used by GSA or when installed or used by others in the manner instructed by GSA infringe Claim 1 of the '873 II Patent. **Claim 1** of the '873 II Patent recites:

> A boat configured to provide an alert that the boat is reconfiguring, or is about to reconfigure, itself to change one or more aspects of a wake, the boat comprising:
>
> a hull configured to produce a wake when the hull moves through water;
>
> one or more positionable surfaces, the one or more positionable surfaces having a plurality of orientations with respect to said hull, wherein the one or more positionable surfaces at a first of said orientations are configured to modify said wake by causing an outward right-side face of said wake to be smoother than an outward left-side face of said wake thereby forming a surf right configuration, and wherein the one or more positionable surfaces at a second of said orientations are configured to modify said wake by causing said outward left-side face of said wake to be smoother than said outward right-side face of said wake thereby forming a surf left configuration;
>
> a rider control device comprising a user interface configured to receive input from a rider surfing behind the boat, said input including a selection by the rider to transition

from said surf right configuration to said surf left configuration, or from said surf

left configuration to said surf right configuration;

one or more actuators responsive to the input received by the user interface to move the

one or more positionable surfaces from said first orientation that is configured to

form the surf right configuration to said second orientation that is configured to

form the surf left configuration, or from said second orientation that is configured

to form the surf left configuration to said first orientation that is configured to

form the surf right configuration; and

a driver notification module configured to provide one or more notifications to a driver of

the boat that the wake is transitioning, or is about to transition, from the surf right

configuration to the surf left configuration, or from the surf left configuration to

the surf right configuration, wherein the driver notification module is configured

to provide the one or more notifications to the driver in response to the input

received from the rider via the rider control device.

87.     The Accused Products are surf systems configured to be installed on inboard

water sports boats to provide an alert that the boat is reconfiguring, or is about to reconfigure,

itself to change one or more aspects of a wake.  *See* https://www.gosurfassist.com/featured-products (option to add light or buzzer notification when tabs move).

88.     The Accused Products are surf systems configured to be installed on inboard

water sports boats having a hull configured to produce a wake when the hull moves through

water.          *See*          https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix4; https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix3.

89.     The Accused Products include one or more positionable surfaces, the one or more positionable surfaces having a plurality of orientations with respect to said hull. *See, e.g.*, https://www.gosurfassist.com/featured-products (describing Go Surf Assist Complete Kit including "Starboard Surf Tab" and "Port Surf Tab").  The Port Surf Tab is configured to modify the wake by causing an outward right-side face of said wake to be smoother than an outward left-side face of said wake to form a surf right configuration, and the Starboard Surf Tab configured to modify said wake by causing said outward left-side face of said wake to be smoother than said outward right-side face of said wake to form a surf left configuration. *See, e.g.*, https://www.gosurfassist.com/featured-products (listing "Controller Information" that explains the "Left Button" that "Deploys starboard side tab creating a surf wave on the left side of the boat" and "Right Button" that "Deploys port side tab creating a surf wave on the right side of the boat.");                    https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix4; https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix3.



90.     The Accused Products include a rider control device comprising a user interface configured to receive input from a rider surfing behind the boat, said input including a selection

by the rider to transition from said surf right configuration to said surf left configuration, or from said surf left configuration to said surf right configuration. *See* https://apps.apple.com/us/app/surf-controller/id1203117403#?platform=appleWatch ("[u]se your watch to adjust the wake and switch sides while your [sic] surfing behind the boat").



91.     The Accused Products include one or more actuators responsive to the input received by the user interface to move the one or more positionable surfaces from the surf right configuration to the surf left configuration, or from the surf left configuration to the surf right configuration. *See* https://apps.apple.com/us/app/surf-controller/id1203117403#?platform=appleWatch ("[u]se your watch to adjust the wake and switch sides while your [sic] surfing behind the boat"); https://www.facebook.com/watch/?v=1591608924337590.

92.     The Accused Products include a driver notification module (a "light" or "buzzer") that provides a notifications to a driver of the boat that the wake is transitioningfrom the surf right configuration to the surf left configuration, or from the surf left configuration to the surf right configuration.  The driver notification module is configured to provide the one or more notifications to the driver in response to the input received from the rider via the rider control device. *See* https://www.gosurfassist.com/featured-products (option to add light or buzzer

notification when tabs move); https://www.gosurfassist.com/featured-products (indicating "light on-steady" means that "the mode is active (Ex. Surf Left Lit-Activated)).

93.    Malibu has suffered damages as a result of GSA's infringement of the '061 Patent, including sales that Malibu lost as a result of GSA's infringement.

94.    GSA's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

95.    GSA will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '873 II Patent unless enjoined by the Court.

96.    GSA's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.   These include the loss of customer goodwill resulting from infringement and impairment of Malibu's reputation as an innovator if GSA is permitted to practice Malibu's patents.

97.    GSA will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

98.    Upon information and belief, GSA's infringement of the '873 II Patent has been and continues to be deliberate and willful.   In committing these acts of infringement, GSA committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

99.    GSA's infringement of the '873 II Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,914,504

100.    Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

101.    GSA infringes the '504 Patent by, *inter alia*, making and/or using within the United States boats with the Accused Products installed that are covered by one or more claims of the '504 Patent. GSA has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).  For example, GSA markets on its website that it performs installations of the Accused Products on boats at its Wichita Falls, Texas, facilities.  *See* https://www.gosurfassist.com/faqs.

102.    Further, GSA induces others to infringe one or more claims of the '504 Patent, acting without authority or license from Malibu, in violation of 35 U.S.C. § 271(b). GSA has knowingly or with willful blindness induced its customers and potential customers to infringe the '504 Patent with the specific intent to induce such infringement by, among other things, encouraging installation of the Accused Products through advertisements, marketing material, installation instructions, and other documentation that instructs customers to install the Accused Products on inboard water sports boats in an infringing manner.  For example, GSA encourages customers through its website to purchase and install the Accused Products in an infringing manner themselves, and it also encourages dealers to purchase and install the Accused Products in an infringing manner.  GSA's website provides instructional videos specifically instructing the installation and use of the Accused Products in an infringing manner.  *See* https://www.gosurfassist.com/instructional-videos-installs.

103.    GSA also contributorily infringes one or more claims of the '504 Patent in violation of 35 U.S.C. § 271(c).  GSA sells and offers to sell products or components knowing

that they, alone or in combination with other components, infringe the '504 Patent and thereby contribute to others' infringement of the '504 Patent. GSA knows its products and components are especially made or especially adapted for installation on inboard watersports boats in a manner that infringes the '504 Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

104. For example, GSA manufactures, uses, sells, and offers for sale products, including the Accused Products, that when installed and used by GSA or when installed or used by others in the manner instructed by GSA infringe Claim 1 of the '504 Patent. **Claim 1** of the '504 Patent recites:

> A water-sports boat configured to facilitate water sports for one or more riders as the water-sports boat moves through water, the water-sports boat comprising:
>
> a hull having a transom, the hull configured to produce a wake having a port wave and a starboard wave that diverge when the hull moves through water;
>
> a steering rudder;
>
> at least one of ballast tanks, bags, or bladders;
>
> a port flap movable from a retracted position to a deployed position, wherein when the port flap is in the retracted position, the port flap is substantially retracted behind the transom such that no substantial portion of the port flap extends past a port-side edge of the transom and such that no substantial portion of the port flap extends past a bottom edge of the transom, and when the port flap is in the deployed position, portions of the port flap are past the transom deflecting water that has traveled along the hull of the water-sports boat;

a starboard flap movable from a retracted position to a deployed position, wherein when the starboard flap is in the retracted position, the starboard flap is substantially retracted behind the transom such that no substantial portion of the starboard flap extends past a starboard-side edge of the transom and such that no substantial portion of the starboard flap extends past the bottom edge of the transom, and when the starboard flap is in the deployed position, portions of the starboard flap are past the transom deflecting water that has traveled along the hull of the water-sports boat;

a port actuator configured to move the port flap between the retracted position and the deployed position; and

a starboard actuator configured to move the starboard flap between the retracted position and the deployed position;

wherein when the port flap is in the deployed position and the starboard flap is in the retracted position, the flaps enhance the starboard wave to form a starboard surf wave by making a face of the starboard wave substantially smoother than a face of the port wave;

wherein when the starboard flap is in the deployed position and the port flap is in the retracted position, the flaps enhance the port wave to form a port surf wave by making the face of the port wave substantially smoother than the face of the starboard wave;

wherein the water-sports boat changes from enhancing the starboard wave to enhancing the port wave or from enhancing the port wave to enhancing the

starboard wave by respectively deploying and retracting the flaps while the water-sports boat is moving through water at a speed suitable for surfing.

105.    The Accused Products are surf systems configured to be installed on water sports boats, and they are configured to facilitate water sports for one or more riders as the boat moves through the water.

106.    The Accused Products are surf systems configured to be installed on a watersports boat with a hull having a transom, the hull configured to produce a wake having a port wave and a starboard wave that diverge when the hull moves through water. The watersports boats also include a steering rudder and ballast tanks.  *See, e.g.,*  https://www.gosurfassist.com/faqs ("This surf system works on many different hulls and must be an inboard motor (flat bottom, deep v, direct drive, etc.) pending there is enough room on the transom (under water lights, accessories mounted in the way, etc.)."); *see also* https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html (listing "Confirmed Applications" of the Accused Products on over 30 inboard watersports boats, each including a hull, a rudder, and ballast tanks); https://www.gosurfassist.com/boat-ballast-setup (recommending boat ballast setups for boats with infringing surf system installed).

107.    The Accused Products are surf systems that include a port flap and a starboard flap.  *See, e.g.,*   https://www.gosurfassist.com/featured-products (describing Go Surf Assist Complete Kit including "Starboard Surf Tab" and "Port Surf Tab").

108.    The Port Surf Tab and the Starboard Surf Tab of the Accused Products are each moveable from a retracted position to a deployed position.  *See, e.g.,* https://www.gosurfassist.com/featured-products (listing "Controller Information" that explains the "Left Button" that "Deploys starboard side tab creating a surf wave on the left side of the

boat" and "Right Button" that "Deploys port side tab creating a surf wave on the right side of the boat."):



109.    In the retracted position, the Port Surf Tab is substantially retracted behind the transom such that no substantial portion of the port flap extends past a port-side edge of the transom and such that no substantial portion of the port flap extends past a bottom edge of the transom.   In the retracted position, the Starboard Surf Tab is substantially retracted behind the transom such that no substantial portion of the starboard flap extends past a starboard-side edge of the transom and such that no substantial portion of the starboard flap extends past the bottom

edge of the transom.   *See, e.g.,*   https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv2; https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv1.



110.    In the respective deployed positions, portions of the Port Surf Tab and the Starboard Surf Tab are past the transom deflecting water that has traveled along the hull of the water-sports boat.   *See, e.g.,*   https://www.gosurfassist.com/featured-products (listing "Controller Information" that explains the "Left Button" that "Deploys starboard side tab creating a surf wave on the left side of the boat" and "Right Button" that "Deploys port side tab creating a surf wave on the right side of the boat.").

111.    The Accused Products also include a port actuator configured to move the Port Surf Tab between the retracted position and the deployed position and a starboard actuator configured to move the Starboard Surf Tab between the retracted position and the deployed position.   *See, e.g.,*   https://www.gosurfassist.com/featured-products ("Lenco XDS Short Throw Actuator(2x)").   *See also*   https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv (annotated below):



Actuator Configured to Move
Port-side Deployable Element

Actuator Configured to Move
Starboard-side Deployable

112.   When the Port Surf Tab is in the deployed position and the Starboard Surf Tab is in the retracted position, the surf tabs enhance the starboard wave to form a starboard surf wave by making a face of the starboard wave substantially smoother than a face of the port wave. When the Sarboard Surf Tab is in the deployed position and the Port Surf Tab is in the retracted position, the flaps enhance the port wave to form a port surf wave by making the face of the port wave substantially smoother than the face of the starboard wave. *See, e.g.,* https://www.gosurfassist.com/featured-products (listing "Controller Information" that explains the "Left Button" that "Deploys starboard side tab creating a surf wave on the left side of the boat" and "Right Button" that "Deploys port side tab creating a surf wave on the right side of the boat."); *See also* https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html ("Switch sides instantly with the push of a button or the GSA app. No wasted time switching the

wave from regular to goofy-footed riders as it only takes under three seconds to switch the side the wave is on. Surfers can also make wave transfers while riding.").

113.    As discussed above, the Accused Products are configured to be installed on the water-sports boat in a manner such that the water-sports boat changes from enhancing the starboard wave to enhancing the port wave or from enhancing the port wave to enhancing the starboard wave by respectively deploying and retracting the Port Surf Tab and Starboard Surf Tab while the water-sports boat is moving through water at a speed suitable for surfing.

114.    Malibu has suffered damages as a result of GSA's infringement of the '504 Patent, including sales that Malibu lost as a result of GSA's infringement.

115.    GSA's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

116.    GSA will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '504 Patent unless enjoined by the Court.

117.    GSA's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.    These include the loss of customer goodwill resulting from infringement and impairment of Malibu's reputation as an innovator if GSA is permitted to practice Malibu's patents.

118.    GSA will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

119.    Upon information and belief, GSA's infringement of the '504 Patent has been and continues to be deliberate and willful.  In committing these acts of infringement, GSA committed egregious misconduct including, for example, acting despite knowing that its actions constituted

infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

120.    GSA's infringement of the '504 Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,322,777

121.    Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

122.    GSA infringes the '777 Patent by, *inter alia*, making and/or using within the United States boats with the Accused Products installed that are covered by one or more claims of the '777 Patent.  GSA has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).  For example, GSA markets on its website that it performs installations of the Accused Products on boats at its Wichita Falls, Texas, facilities.  *See* https://www.gosurfassist.com/faqs.

123.    Further, GSA induces others to infringe one or more claims of the '777 Patent, acting without authority or license from Malibu, in violation of 35 U.S.C. § 271(b).  GSA has knowingly or with willful blindness induced its customers and potential customers to infringe the '777 Patent with the specific intent to induce such infringement by, among other things, encouraging installation of the Accused Products through advertisements, marketing material, installation instructions, and other documentation that instructs customers to install the Accused Products on inboard water sports boats in an infringing manner.  For example, GSA encourages customers through its website to purchase and install the Accused Products in an infringing manner themselves, and it also encourages dealers to purchase and install the Accused Products

in an infringing manner.  GSA's website provides instructional videos specifically instructing the installation and use of the Accused Products in an infringing manner.  *See* https://www.gosurfassist.com/instructional-videos-installs.

124.    GSA also contributorily infringes one or more claims of the '777 Patent in violation of 35 U.S.C. § 271(c).  GSA sells and offers to sell products or components knowing that they, alone or in combination with other components, infringe the '777 Patent and thereby contribute to others' infringement of the '777 Patent.  GSA knows its products and components are especially made or especially adapted for installation on inboard watersports boats in a manner that infringes the '777 Patent and are not a staple item, article, or commodity of commerce suitable for substantial noninfringing use.

125.    For example, GSA manufactures, uses, sells, and offers for sale products, including the Accused Products, that infringe at least Claim 14 of the '777 Patent.  Further, GSA manufactures, uses, sells, and offers for sale products, including the Accused Products, that when installed and used by GSA or when installed or used by others in the manner instructed by GSA infringe other claims of the '777 Patent.  **Claim 14** of the '777 Patent recites:

> A wake surf system for use with an inboard watersports boat, the wake surf system comprising:
>
> a port-side deployable element configured to be operably coupled to a hull of an inboard water-sports boat proximate a transom, wherein the port-side deployable element is configured to be movable between a deployed position and an at least substantially retracted position;
>
> a starboard-side deployable element configured to be operably coupled to the hull of the inboard water-sports boat proximate the transom, wherein the starboard-

side deployable element is configured to be movable between a deployed

position and an at least substantially retracted position;

a user interface configured to receive a user command to change a surf wake from

one side of the inboard water-sports boat to the other side of the inboard water-

sports boat, wherein the user interface comprises a first user input element

configured to receive a selection of a starboard-side surf wake, and wherein the

user interface comprises a second user input element configured to receive a

selection of a port-side surf wake; and

actuators configured to move the port-side deployable element and the starboard-

side deployable element in response to the user command received by the user

interface.

126.    The Accused Products are wake surf systems for use with an inboard watersports

boat.  *See, e.g.,* https://www.gosurfassist.com/faqs ("This surf system works on many different

hulls and must be an inboard motor (flat bottom, deep v, direct drive, etc.) pending there is

enough room on the transom (under water lights, accessories mounted in the way, etc.)");

https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html ("Go Surf Assist is a

retrofittable aftermarket surf system that fits on nearly any inboard boat and delivers modern

wake shaping technology for an improved surf wave and OEM appearance.").

127.    The Accused Products include a port-side deployable element and a starboard-

side deployable element, each configured to be operably coupled to the hull of the inboard-water

sports boat.  *See, e.g.,*   https://www.gosurfassist.com/featured-products (describing Go Surf

Assist Complete Kit including "Starboard Surf Tab" and "Port Surf Tab").

128.     Each of the port-side deployable element and the starboard-side deployable element are configured to be moveable between a deployed position and an at least substantially retracted position.  The Port Surf Tab and Starboard Surf Tab are shown in a retracted position below.     *See, e.g.,*     https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv2; https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv1.



129.     The Port Surf Tab and Starboard Surf Tab are moveable from the retracted positions to deployed positions.     *See, e.g.,*     https://www.gosurfassist.com/featured-products (listing "Controller Information" that explains the "Left Button" that "Deploys starboard side tab creating a surf wave on the left side of the boat" and "Right Button" that "Deploys port side tab creating a surf wave on the right side of the boat."):



130.    As shown above, the Controller of the Accused Products is a user interface configured to receive a user command to change a surf wake from one side of the inboard water-sports boat (e.g., the left side of the boat) to the other side of the inboard water-sports boat (e.g., the right side of the boat), and comprises a first user input element ("Right Button") configured to receive a selection of a starboard-side surf wake and a second user input element ("Left Button") configured to receive a selection of a pot-side surf wake.

131.    The Accused Products include actuators configured to move the port-side deployable element and the starboard-side deployable element in response to the user command received by the user interface.    *See, e.g.,*    https://www.gosurfassist.com/featured-products ("Lenco    XDS    Short    Throw    Actuator(2x)").    *See    also* https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv (annotated below):



Actuator Configured to Move
Port-side Deployable Element

Actuator Configured to Move
Starboard-side Deployable Element

132.    Malibu has suffered damages as a result of GSA's infringement of the '777 Patent, including sales that Malibu lost as a result of GSA's infringement.  GSA's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

133.    GSA will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '777 Patent unless enjoined by the Court.

134.    GSA's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.   These include the loss of customer goodwill resulting from infringement and impairment of Malibu's reputation as an innovator if GSA is permitted to practice Malibu's patents.

135.    GSA will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

136.    Upon information and belief, GSA's infringement of the '777 Patent has been and continues to be deliberate and willful.   In committing these acts of infringement, GSA committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

137.    GSA's infringement of the '777 Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 10,683,061

138.    Malibu repeats and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if repeated in full here.

139.    GSA infringes the '061 Patent by, *inter alia*, making and/or using within the United States boats with the Accused Products installed that are covered by one or more claims of the '061 Patent. GSA has acted without authority or license from Malibu, in violation of 35 U.S.C. § 271(a).   For example, GSA markets on its website that it performs installations of the

Accused   Products   on   boats   at   its   Wichita   Falls,   Texas,   facilities.   *See*
https://www.gosurfassist.com/faqs.

140.    Further, GSA induces others to infringe one or more claims of the '061 Patent,
acting without authority or license from Malibu, in violation of 35 U.S.C. § 271(b). GSA has
knowingly or with willful blindness induced its customers and potential customers to infringe the
'061 Patent with the specific intent to induce such infringement by, among other things,
encouraging installation of the Accused Products through advertisements, marketing material,
installation instructions, and other documentation that instructs customers to install the Accused
Products on inboard water sports boats in an infringing manner.  For example, GSA encourages
customers through its website to purchase and install the Accused Products in an infringing
manner themselves, and it also encourages dealers to purchase and install the Accused Products
in an infringing manner.  GSA's website provides instructional videos specifically instructing the
installation   and   use   of   the   Accused   Products   in   an   infringing   manner.   *See*
https://www.gosurfassist.com/instructional-videos-installs.

141.    GSA also contributorily infringes one or more claims of the '061 Patent in
violation of 35 U.S.C. § 271(c).  GSA sells and offers to sell products or components knowing
that they, alone or in combination with other components, infringe the '061 Patent and thereby
contribute to others' infringement of the '061 Patent. GSA knows its products and components
are especially made or especially adapted for installation on inboard watersports boats in a
manner that infringes the '061 Patent and are not a staple item, article, or commodity of
commerce suitable for substantial noninfringing use.

142.    For example, GSA manufactures, uses, sells, and offers for sale products,
including the Accused Products, that infringe at least Claim 24 of the '061 Patent. Further, GSA

manufactures, uses, sells, and offers for sale products, including the Accused Products, that when installed and used by GSA or when installed or used by others in the manner instructed by GSA infringe other claims of the '061 Patent.  **Claim 24** of the '061 Patent recites:

> A wake surf system for use with a water-sports boat that is configured to produce a wake having a port-side wave and a starboard-side wave to facilitate user-controlled selection of which side of the wake to enhance for wake surfing, the wake surf system comprising:
>
> a port-side deflector movable between a neutral position and a deployed position, wherein the port-side deflector in the deployed position comprises a generally horizontal portion and a down-turned portion, wherein the down-turned portion is positioned at an edge of the generally horizontal portion and is angled downward relative to the generally horizontal portion;
>
> a port-side electronic actuator configured to move the port-side deflector between the neutral position and the deployed position;
>
> a starboard-side deflector movable between a neutral position and a deployed position, wherein the starboard-side deflector in the deployed position comprises a generally horizontal portion and a down-turned portion; wherein the down-turned portion is positioned at an edge of the generally horizontal portion and is angled downward relative to the generally horizontal portion;
>
> a starboard-side electronic actuator configured to move the starboard-side deflector between the neutral position and the deployed position;
>
> a user interface configured to receive user input comprising a selection of a port-side surf mode and a selection of a starboard-side surf mode;

wherein, in response to the selection of the port-side surf mode the port-side actuator and the starboard-side actuator are configured to position the port-side deflector and the starboard-side deflector in a port-side surf configuration that is configured to enhance port-side wake surfing by at least causing the port-side wave to be smoother than the starboard-side wave;

wherein, in response to the selection of the starboard-side surf mode the port-side actuator and the starboard-side actuator are configured to position the port-side deflector and the starboard-side deflector in a starboard-side surf configuration that is configured to enhance starboard-side wake surfing by at least causing the starboard-side wave to be smoother than the port-side wave.

143. The Accused Products are wake surf systems for use with an inboard watersports boat that is configured to produce a wake having a port-side wave and a starboard-side wave to facilitate user-controlled selection of which side of the wake to enhance for wake surfing. *See, e.g.,* https://www.gosurfassist.com/faqs ("This surf system works on many different hulls and must be an inboard motor (flat bottom, deep v, direct drive, etc.) pending there is enough room on the transom (under water lights, accessories mounted in the way, etc.)"); https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html ("Go Surf Assist is a retrofittable aftermarket surf system that fits on nearly any inboard boat and delivers modern wake shaping technology for an improved surf wave and OEM appearance."); https://www.wakemakers.com/go-surf-assist-aftermarket-surf-system.html ("Switch sides instantly with the push of a button or the GSA app. No wasted time switching the wave from regular to goofy-footed riders as it only takes under three seconds to switch the side the wave is on. Surfers can also make wave transfers while riding.");

https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix4;

https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix3.

144.    The Accused Products include a pair of deflectors, including a port-side deflector and a starboard-side deflector. *See, e.g.,*    https://www.gosurfassist.com/featured-products (describing Go Surf Assist Complete Kit including "Starboard Surf Tab" and "Port Surf Tab").

145.    The Port Surf Tab and Starboard Surf Tab are each moveable between neutral positions and a deployed positions. *See, e.g.,*  https://www.gosurfassist.com/featured-products (listing "Controller Information" that explains the "Left Button" that "Deploys starboard side tab creating a surf wave on the left side of the boat" and "Right Button" that "Deploys port side tab creating a surf wave on the right side of the boat."):



146.    In the deployed position, the Port Surf Tab and Starboard Surf Tab include a generally horizontal portion and a down-turned portion, the down-turned portion positioned at an edge of the generally horizontal portion and angled downward relative to the generally horizontal portion.    *See,    e.g.,*    https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv (annotated below):



Down-turned Portion          Generally Horizontal Portion
Positioned at Edge of
Horizontal Portion

147.    The Accused Products include a port-side electronic actuator and a starboard-side electronic actuator configured to move the port-side deflector and the starboard-side deflector between the neutral position and the deployed position. *See, e.g.,* https://www.gosurfassist.com/featured-products ("Lenco XDS Short Throw Actuator(2x)"). *See also* https://www.gosurfassist.com/pictures?lightbox=dataItem-ipoh4umv (annotated below):



Port-side Electronic Actuator
Configured to Move
Port-side Deflector

Starboard-side Electronic Actuator
Configured to Move
Starboard-side Deflector

148.    The Accused Products include a user interface configured to receive a user command to change a surf wake from one side of the inboard water-sports boat (e.g., the left side of the boat) to the other side of the inboard water-sports boat (e.g., the right side of the boat), and comprises a first user input element ("Right Button") configured to receive a selection of a starboard-side surf wake and a second user input element ("Left Button") configured to receive a selection of a pot-side surf wake.

149.    In response to the selection of the port-side surf mode the port-side actuator and the starboard-side actuator of the Accused Products are configured to position the port-side deflector and the starboard-side deflector in a port-side surf configuration that is configured to enhance port-side wake surfing by at least causing the port-side wave to be smoother than the starboard-side      wave,      as      shown      below.      *See*

https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix4;

https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix3.

150.    In response to the selection of the starboard-side surf mode the port-side actuator and the starboard-side actuator of the Accused Products are configured to position the port-side deflector and the starboard-side deflector in a starboard-side surf configuration that is configured to enhance starboard-side wake surfing by at least causing the starboard-side wave to be smoother              than              the              port-side              wave.              *See*

https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix4;

https://www.gosurfassist.com/pictures?lightbox=dataItem-ipohvix3.



151.    Malibu has suffered damages as a result of GSA's infringement of the '061 Patent, including sales that Malibu lost as a result of GSA's infringement.

152.    GSA's infringement, inducement of infringement, and contributory infringement is literal infringement or, in the alternative, infringement under the doctrine of equivalents.

153.    GSA will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '061 Patent unless enjoined by the Court.

154.    GSA's acts of infringement have caused and, unless enjoined by this Court, will continue to cause Malibu to sustain irreparable damage, loss, and injury, for which Malibu has no adequate remedy at law.   These include the loss of customer goodwill resulting from infringement and impairment of Malibu's reputation as an innovator if GSA is permitted to practice Malibu's patents.

155.    GSA will continue to derive and receive advantages, gains, and profits from its infringement in an amount that is not presently known to Malibu.

156.    Upon information and belief, GSA's infringement of the '061 Patent has been and continues to be deliberate and willful.  In committing these acts of infringement, GSA committed egregious misconduct including, for example, acting despite knowing that its actions constituted infringement of a valid patent, or recklessly disregarding the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

157.    GSA's infringement of the '061 Patent was and is deliberate and willful, entitling Malibu to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### PRAYER FOR RELIEF

158.    Judgment in favor of Malibu that GSA has infringed the '873 I, '161, '873 II, '504, '777, and '061 Patents;

159.    Preliminary and permanently enjoining GSA, its officers, agents, servants, and employees, and all persons acting in concert with them, and each of them, from infringing, inducing others to infringe, and/or engaging in contributory infringement of the '873 I, '161, '873 II, '504, '777, and '061 Patents;

160.    Awarding Malibu damages based on GSA's infringement of the '873 I, '161, '873 II, '504, '777, and '061 Patents in an amount sufficient to compensate Malibu, as well as enhanced damages pursuant to 35 U.S.C. § 284 awarded for GSA's willful, wanton, and deliberate infringement or otherwise;

161.    Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding Malibu its attorneys' fees and costs in this action;

162.    Assessing prejudgment interest on damages; and

163.    Awarding Malibu such other and further relief as the Court deems just and equitable.

Dated: June 18, 2020

By:    _____

DARIN W. SNYDER – Cal. S.B. # 136003
DAVID S. ALMELING – Cal. S.B. # 235449
CAMERON W. WESTIN – Cal. S.B. # 290999
*pro hac vice application forthcoming*
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Phone: (415) 984-8700
Facsimile: (415) 984-8701
dsnyder@omm.com
dalmeling@omm.com
cwestin@omm.com

MATTHEW M. GOOGE – TN BPR No. 030164
ROBINSON IP LAW, PLLC
*pro hac vice application forthcoming*
9724 Kingston Pike, Suite 1403
Knoxville, TN 37922
Phone: (865) 978-6480
Facsimile: (865) 978-6493
MGooge@RobinsonIPLaw.com

DAN N. MACLEMORE
State Bar No. 24037013
ANDY PATTILLO
State Bar No. 24102339
MATT CZIMSKEY
State Bar No. 24082887
BEARD KULTGEN BROPHY
BOSTWICK & DICKSON, PLLC
220 South 4th Street
Waco, Texas 76701
Tel (254) 776-5500
Fax (254) 776-3591
maclemore@thetexasfirm.com
pattillo@thetexasfirm.com
czimskey@thetexasfirm.com

Attorneys for Plaintiff
MALIBU BOATS, LLC